Filed 10/13/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ANNA T., a Person Coming Under the Juvenile Court Law. | B299987 |
| | (Los Angeles County Super. Ct. No.18CCJP04605A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff, | |
| v. | |
| TODD T., | |
| Defendant and Appellant; | |
| ANNA T., a Minor, etc., | |
| Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge. The order terminating jurisdiction is affirmed. Orders purporting to modify the final judgment are vacated.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Marsha F. Levine, under appointment by the Court of Appeal, for Minor and Respondent.

_____

Welfare and Institutions Code section 362.4[1] authorizes the juvenile court, when terminating jurisdiction over a dependent child, to issue a custody and visitation order that will become part of the parents' family law file[2] and remain in effect in the family law action "until modified or terminated by a subsequent order." Section 302, subdivision (d), reinforces the post-termination significance of the juvenile court's section 362.4 custody orders by providing that those orders (commonly referred to as "exit orders") may not be modified by the family court "unless the court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child."

Here, the dependency petition was filed, and the juvenile court assumed jurisdiction, after the family court had entered a final judgment awarding Todd T. sole legal authority to make

---

[1] Statutory references are to this code unless otherwise stated.

[2] If no family law action is pending, the court's order "may be used as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides." (§ 362.4, subd. (c).)

2

healthcare decisions for his daughter, Anna T. When the juvenile court terminated its jurisdiction a year later, it expressly declined to issue a juvenile court custody order pursuant to section 362.4, "revert[ing] back to the original family law decision." Nonetheless, the court ordered Anna to continue in treatment with a therapist selected by Anna's mother, Nancy D., to be paid by Todd, until that therapist determined a change would not interfere with Anna's treatment. The court also prohibited Todd from returning Anna to two healthcare providers (a pediatrician and a therapist) who had previously seen her.

Todd appeals the healthcare orders, arguing the juvenile court improperly delegated to the therapist the decision of how long Anna would continue in treatment with her at his expense and abused its discretion by basing the order precluding him from taking Anna to her former pediatrician and therapist on mistaken factual assumptions. We do not reach those issues. The challenged orders, not having been made as part of a juvenile court custody order pursuant to section 362.4, had no continuing effect after the juvenile court terminated its jurisdiction. Accordingly, those orders are vacated.[3] Any ongoing issues regarding Todd's authority to make healthcare decisions regarding Anna are properly addressed to the family court.

---

[3] In her supplemental letter brief Anna's counsel suggests, if we conclude the challenged orders have no post-termination effect, Todd's appeal should be dismissed as moot. To avoid any possible confusion concerning their continuing significance, however, it is more appropriate to vacate the orders.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Family Court Proceedings*

Nancy and Todd married in 2009. Anna was born four years later. They separated in early 2015, and Nancy petitioned for dissolution of the marriage in November of that year.

Nancy and Todd stipulated to dissolution of their marriage and agreed on issues of property division and spousal support. They reserved for trial child custody and child support.

Following a four-day contested hearing the family court issued a final judgment on reserved issues on May 17, 2018, ordering Nancy and Todd to share legal and physical custody of Anna. However, after observing the hostility between the parents and their very different decisionmaking styles, the court concluded joint decisionmaking was impossible. Accordingly, to keep both parents involved in the child's life while minimizing the need for communication between the parents, the court awarded each parent sole legal custody on certain issues, with the other parent entitled to have full access to records and personnel. Specifically, the family court awarded sole legal authority on all healthcare issues to Todd; all legal authority on educational decisions to Nancy. The court additionally adopted a physical custody schedule that allowed each parent both weekday and weekend time.[4]

---

[4] The judgment detailed a physical custody/parenting plan that provided Anna would be with Todd every first, third and fifth weekend of the month and every Tuesday from 2:00 p.m. or the end of school to Wednesday at 5:00 p.m. Anna was to be with Nancy all times not designated as Todd's custodial time.

2. *The Juvenile Court Assumes Jurisdiction*

On July 24, 2018 the Los Angeles County Department of Children and Family Services (Department) filed a petition on behalf of Anna alleging she came within section 300, subdivision (b)(1) (failure to protect) because of an injury consistent with a healed cigarette burn and a bruised nose after being in the care of Nancy's new partner, and subdivision (c) (serious emotional damage) because of the conflict between Nancy and Todd over Anna's care. The juvenile court found a prima facie case for detention, removed Anna from Nancy's care and released her to Todd.

At a combined jurisdiction/disposition hearing on September 17, 2018 the court dismissed the subdivision (b)(1) allegation and sustained the subdivision (c) allegation as amended by interlineation to state the parents' disputes over custody and visitation created a substantial risk to Anna of serious emotional damage. The court ordered Anna released to both parties, designated a custody schedule based on the family court order, granted educational rights to Nancy and medical rights to Todd and ordered the Department to provide family maintenance services. The court also directed Nancy and Todd to submit the names of potential therapists to Anna's counsel, who would select someone to treat Anna from that list.

3. *Issues Regarding Anna's Therapy*

In December 2018 Nancy and Todd agreed Anna would be seen by Dr. Angela Bissada, a therapist selected by Nancy. "[M]other agree[d] to bear the cost of these sessions ($300.00 per hour), while father agree[d] to pay the co-pay (not to exceed

---

Decisions on issues not specifically addressed in the judgment were to be made by the parent with custody at that time.

$50.00) for said sessions." Notwithstanding this arrangement, Todd and Nancy continued to disagree regarding Anna's therapy and the responsibility for its costs. In Todd's view, expressed in an email to the Department's social worker, Anna was deteriorating, rather than progressing, in her therapy sessions with Dr. Bissada. Todd stated his intent to change therapists.

4. *The Section 364 Review Hearing and Termination of Dependency Jurisdiction*

At the section 364 review hearing on August 9, 2019 Todd urged the court to terminate dependency jurisdiction and award Nancy and him equal legal and physical custody of Anna. The Department, concerned about Anna's emotional well-being, recommended the court retain jurisdiction and continue to provide services to the family. Anna's counsel and Nancy joined that request and proposed that the court resolve the difficulties regarding Anna's therapy by granting Nancy sole legal authority to make healthcare decisions for the child.[5]

The court concluded there were no issues that justified retaining dependency jurisdiction, explaining its sole concern was "we've now got [Anna] in a therapy situation with a therapist who seems to be helping her. And I don't want to have the dad rock that boat."[6] Accordingly, the court ruled it would terminate

---

[5]    Anna's counsel argued it was "untenable for father to hold medical and mother to hold education rights. They can't agree on one single issue . . . . This is a protracted family law case with a family law exit order that was not tenable. And we see that here."

[6]    The court observed, "[T]here are no other dependency issues. We've settled all of the dependency issues. The rest are

jurisdiction and revert to the family court's order "with this carve out: . . . Father will have all of the medical rights for those decisions with the exception that minor is to continue to be seen by Dr. Angela Bissada. Father will not be permitted to change that. She will remain with Bissada, and he will pay the bills for Bissada. . . . There will be no change in therapists until Dr. Bissada agrees that she can transfer the case to a therapist in father's health plan without detriment to the minor's treatment. There's no way I can find that the best interest of the child is going to be effectuated unless and until I know that the therapist who is doing a good job with the child right now continues to be the therapist."

Notwithstanding its acknowledgment that it was modifying the family court's final judgment granting Todd the authority to make all medical decisions concerning Anna, the court, without explanation, stated, "I don't think we need an exit order. We are reverting to the original family law order. And the only thing that I'm changing are the things that I've stated on the record that will go into the minute order." Anna's counsel then asked the court to include in the minute order that Anna could not see her former pediatrician (Dr. Marianne Finerman) or her former therapist (Dr. Gary Larkin). Todd did not object.

The August 9, 2019 minute order terminating juvenile court jurisdiction restates the court's decision not to issue a juvenile court custody order pursuant to section 362.4: "Father to hold all minor's medical rights with the exception that the minor continues to be seen by Dr. Bissada. Father can't change that and father is to pay the bills for Dr. Bissada. Mother is to ensure

all family law issues that the parties can deal with in family court."

the minor is seen by Dr. Bissada and mother is responsible for transporting the minor to and from therapy sessions with Dr. Bissada.  [¶]  There is to be no change until Dr. Bissada can change to a therapist in father's health plan and does not interfere with the minor's treatment.  [¶]  Father is not to return the minor to Gary Larkin or Marianne Finerman or individuals in their offices.  [¶]  The Court reverts back to the original family law decision—no Juvenile Custody Order is required for his case."

5. *Todd's Appeal*

Todd filed a timely notice of appeal.[7]  In his opening brief Todd conceded substantial evidence supports a finding it was in Anna's best interest to remain in therapy with Dr. Bissada for some period for purposes of continuity.  However, he argued the open-ended nature of the juvenile court's order and its grant to Dr. Bissada of the right to determine when Anna could change therapists constituted an improper delegation of decisionmaking authority to her—authority Todd asserted should be exercised by the court or Anna's parent.  Todd also argued the prohibition on returning Anna to Dr. Larkin or Dr. Finerman was based on a mistaken assertion it had been the court, rather than the Department, that had earlier concluded those healthcare professionals were favoring Todd rather than acting impartially in their treatment of Anna.

After Todd filed his opening brief, the Department submitted a letter in lieu of a respondent's brief explaining it had recommended the case remain open because it believed Anna

---

[7]     Nancy also filed a notice of appeal.  Her appeal was dismissed for failure to file an opening brief.

8

continued to be at risk of emotional harm and stating it took no position on the issues raised by Todd's appeal. Anna, through appointed counsel, then filed a respondent's brief and a motion to take additional evidence on appeal, urging us to dismiss Todd's appeal under the disentitlement doctrine because of Todd's alleged interference with Anna's treatment by Dr. Bissada after the juvenile court's August 9, 2019 order[8] or, in the alternative, to affirm the juvenile court's order as well within its discretion.

After briefing was completed we invited the parties to submit supplemental letter briefs addressing the court's failure to issue a juvenile court custody order under section 362.4.

## DISCUSSION

1. *The Law Governing Issuance of a Juvenile Court Custody Order*

    a. *Statutory provisions*

The Legislature clearly defined the respective roles of the family court and the juvenile court in determining issues of child custody. The family court has jurisdiction to make orders regarding custody and visitation of the minor children of a marriage in an action for dissolution of the marriage or legal separation of the parties. (Fam. Code, §§ 2010, subd. (b); 3021, subds. (a), (c); see Fam. Code, § 3011 [factors considered in determining best interest of child]; see also Fam. Code, § 3120 ["[w]ithout filing a petition for dissolution of marriage or legal separation of the parties, a spouse may bring an action for the

_____

[8] According to the declarations submitted with Anna's motion to take additional evidence, Dr. Bissada has stopped treating Anna because of Todd's interference. Todd submitted evidentiary objections to most of the material presented in Anna's motion. We deny the motion as unnecessary to our decision.

9

exclusive custody of the children of the marriage"].)  Once a child has been adjudged a dependent of the juvenile court pursuant to Welfare and Institutions Code section 300, however, "any issues regarding custodial rights between his or her parents shall be determined solely by the juvenile court . . . so long as the child remains a dependent of the juvenile court."  (Welf. & Inst. Code, § 302, subd. (c); see *id.*, § 304 ["[w]hile the child is under the jurisdiction of the juvenile court all issues regarding his or her custody shall be heard by the juvenile court"]; Cal. Rules of Court, rule 5.620(a) ["[o]nce a petition has been filed alleging that a child is described by section 300, and until the petition is dismissed or dependency is terminated, the juvenile court has exclusive jurisdiction to hear proceedings relating to the custody of the child and visitation with the child and establishing a guardianship for the child"].)[9]

The Legislature has also expressly delineated the procedures that must be followed by the juvenile court if it intends a custody or visitation order to have continuing effect after dependency jurisdiction terminates.  Section 362.4, subdivision (a), provides, "If the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years, and proceedings for dissolution of marriage, for nullity of marriage, or for legal separation, of the minor's parents . . . are pending in the superior court of any county, or an order has been entered with regard to the custody of that minor, the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child."

---

[9]     All rule references are to the California Rules of Court.

10

Section 362.4, subdivision (b), specifies an order issued pursuant to subdivision (a) "shall continue until modified or terminated by a subsequent order of the superior court" and directs the order be filed in family court proceedings.

That only a juvenile court custody order issued pursuant to section 362.4, not any juvenile court order affecting custody, will continue in effect after termination is made plain by section 302, subdivision (d), and its legislative history. As discussed, that subdivision provides, "Any custody or visitation order issued by the juvenile court at the time the juvenile court terminates its jurisdiction pursuant to Section 362.4 regarding a child who has been previously adjudged to be a dependent child of the juvenile court shall be a final judgment and shall remain in effect after that jurisdiction is terminated. The order shall not be modified in a proceeding or action described in Section 3021 of the Family Code unless the court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child."

As initially drafted, however, Assembly Bill No. 2464 (1999-2000 Reg. Sess.) (Assembly Bill 2464), which added subdivision (d) to section 302 prohibiting a family court from modifying a custody or visitation order issued pursuant to section 362.4 without a showing of a significant change of circumstances,[10] extended this continuing, post-termination effect

---

[10]     Prior to the addition of subdivision (d) to section 302, custody and visitation orders issued by the juvenile court on termination of dependency jurisdiction were treated by many courts as temporary orders in a pending family law action that could be modified upon a showing that modification was in the best interests of the child without an additional showing of a material change in circumstances. (See Assem. Com. on

11

to all juvenile court custody and visitation orders, not only to section 362.4 exit orders.  The first version of section 302's new subdivision (d) in Assembly Bill 2464 provided, "Any order issued by the juvenile court regarding the custody of, or visitation with, a child who has been previously adjudged to be a dependent child of the juvenile court shall remain in effect after that jurisdiction is terminated and shall not be modified unless . . . ." (Assem. Bill 2464 (1999-2000 Reg. Sess.) as amended April 10, 2000.)[11]  As explained in the bill analysis prepared for the Assembly Committee on the Judiciary's hearing on May 9, 2000, the bill's author agreed to amend this language to include the limiting reference to section 362.4 orders in response to concerns raised by staff:  "The precise language of the bill prohibits the modification of an order issued by the [juvenile] court regarding custody or visitation.  The family court is bound by custody or visitation orders of the juvenile court to the extent that the juvenile court issues exit orders upon the juvenile court's termination of jurisdiction . . . .  The author has therefore agreed to amend the bill at page 3, line 1, to clarify that it was meant to only apply to modification of juvenile court exit orders."  (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2464 (1999-2000 Reg. Sess.), as amended April 10, 2000, p. 5 [discussing proposed amendment to "limit to modification of exit orders"].)  The new

Judiciary, Analysis of Assem. Bill 2464 (1999-2000 Reg. Sess.), as amended April 10, 2000, p. 4.)

[11]      As originally introduced on February 24, 2000 by Assemblymember Sheila Kuehl, Assembly Bill 2464 was a shell, or placeholder, bill.  The legislation as amended on April 10, 2000 was the initial version that contained a proposed new subdivision (d) to section 302.

12

language restricting continuing effect to custody and visitation orders issued pursuant to section 362.4 appeared in May 17, 2000 amendments to Assembly Bill 2464 and remained through its enactment into law.

b. *The mandatory Judicial Council form (JV-200)*

The Legislature directed the Judicial Council to adopt forms for any post-termination custody order issued under section 362.4. (§ 362.4, subd. (e).) The Judicial Council has done so and, in rule 5.700(b), made use of that form mandatory: "The order must be prepared on *Custody Order-Juvenile-Final Judgment* (form JV-200)." Rule 5.700(b), (c) and (d) further prescribe the procedures that must be followed for the preparation and transmission of the juvenile court custody order from the juvenile court to the receiving family court and for filing and providing notice to the parties once the order has been received.

The importance of using mandatory form JV-200 was explained in the August 18, 2015 report by the Judicial Council's Family and Juvenile Law Advisory Committee (Advisory Com.) recommending changes to the form, which were thereafter adopted by the Council and remain in effect today: "The orders need to provide specific direction to the parents and other parties to facilitate compliance and reduce the potential for conflict . . . . [¶] Juvenile final custody orders also need to provide sufficient detail, and use language familiar to the family law bench and bar, to permit the family court to enforce them if a dispute does arise or to modify or terminate the orders if circumstances change significantly and modification would be in the best interest of the child. The information included in the juvenile court order must address the circumstances that led to the

13

juvenile court's child custody and parenting time orders to enable a family court to determine whether circumstances have changed to a degree that justifies considering whether the requested modification is in the best interests of the child. The child custody orders need to serve these functions without disclosing juvenile case information that should remain confidential, because juvenile court child custody orders, including attachments, are not themselves confidential. (§ 362.4.)" (Advisory Com. Rep., pp. 3-4.)

2. *The Juvenile Court's Failure To Follow Required Procedures for Issuing Post-termination Custody Orders Deprives Its Orders of Continuing Effect*

Although the juvenile court here plainly recognized its ability to issue a juvenile court custody order pursuant to section 362.4, the court believed it unnecessary in this case, stating as it ordered termination of dependency jurisdiction, "I don't think we need an exit order." The court was wrong. For the court's orders that Anna continue in therapy with Dr. Bissada and that Todd not return Anna to the care of Dr. Larkin or Dr. Finerman to remain effective after dependency jurisdiction terminated, use of the procedures outlined in section 362.4 and rule 5.700 and preparation and filing of mandatory form JV-200 were essential. The failure to do so means those orders are no longer valid: Except as provided in sections 302, subdivision (d), and 362.4, orders of the juvenile court regarding custody and visitation are effective only while that court exercises its jurisdiction over the child. (See §§ 302, subd. (c) [issues regarding parents' custodial rights are to be determined by the juvenile court "so long as the child remains a dependent of the juvenile court"], 304, 2d par. ["[t]his section shall not be

14

construed to divest the domestic relations division of a superior court from hearing any issues regarding the custody of a child when that child is no longer a dependent of the juvenile court"].)

Insistence that the juvenile court adhere to the statutes and rules of court detailing the procedures for issuance of post-termination custody orders is not simply a matter of hypertechnical appellate court literalism. Because the juvenile court failed to utilize those procedures, its orders regarding Anna's treatment were not forwarded for filing and service in Todd and Nancy's family law action and properly remain confidential, depriving the family court judge and the parties in that proceeding of a nonconfidential explanation on form JV-200 of the circumstances the juvenile court found justified its decision to modify the May 17, 2018 final judgment awarding Todd full authority to make healthcare decisions for Anna.[12] The rules for issuance of a juvenile court custody order are rules for a reason and must be followed.

---

[12] In her supplemental letter brief Anna's counsel states it appears the family court was provided with the juvenile court's minute order as an exhibit to a request for modification filed by Todd. Putting aside any issue as to the appropriateness of filing a confidential minute order in the family law proceedings, a party's submission of the document without the court-provided information on form JV-200 is a wholly unsatisfactory substitute for the procedure mandated by statute and the California Rules of Court.

## DISPOSITION

The juvenile court's order terminating dependency jurisdiction is affirmed.  Its orders purporting to modify the family court's final judgment granting Todd the authority to make all healthcare decisions for Anna are vacated.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.

16